William E. Brennan, Jr., J.
This is a motion brought by the third-party defendant, Dr. John D. Mountain, to dismiss for legal insufficiency the third-party complaint of the defendant third-party plaintiff, North Shore Hospital Inc. The facts alleged in the complaint and the third-party complaint, which must be taken as admitted on this motion, indicate that the plaintiff’s laryngeal nerves were severed and injured during the course of a thyroidectomy performed by the defendant resident staff doctor of North .Shore Hospital, Abdullah Mishrick, and the attending surgeon, third-party defendant Dr. Mountain; that Mishrick actually severed and injured the nerves and that Mountain supervised the operation.
Insofar as the complaint asserts claims against the hospital for failure to select a qualified resident physician and for failure properly to supervise the operation, this motion is obviously well taken. Either of these theories would, if liability followed, place the hospital in the position of an actively negligent tort-feasor without a right to indemnity. (Putvin v. Buffalo Elec. Co., 5 N Y 2d 447.)
In addition to these theories, however, plaintiff asserts liability under the doctrine of respondeat superior extended to charitable institutions in the case of Bing v. Thunig (2 N Y 2d 656) on the ground that Mishrick was an employee of the hospital and that his negligence during the course of the operation was therefore attributable to the hospital. Thus the question is raised as to whether, under any possible evidence which may be introduced in support of the complaint and the third-party complaint, the hospital could be held as only passively negligent and therefore entitled to indemnity if the same proof demonstrated that Dr. Mountain had been actively negligent.
The movant, relying on Sands v. Klein (8 A D 2d 836, affd. 7 N Y 2d 896), maintains that the most which the hospital could prove is that the parties were in pari delicto, a situation which would preclude recovery over. (Fox v. Western N. Y. Motor Lines, 257 N. Y. 305.) The Sands case, however, is not precisely in point. In that case there was a cross complaint by the defendant hospital against the defendant private physician, each defendant having been accused of independent and concurring acts of negligence. Here we have but one act charged, and are required to determine, under any possible proof, whether ultimate liability could possibly be imposed upon the doctor who supervised the operation during which the act occurred.
It would seem apparent that an employee of a hospital assisting at an operation performed by an independent physician at the hospital can be placed in a position of divided loyalty and *894 divided duty. In the urgent atmosphere of major surgery, such an employee undoubtedly faces the duty of immediate and obedient compliance with the orders of the supervising surgeon, as well as the duty of refraining from negligent acts toward the patient, and there are times when such duties might be in sharp conflict. It is entirely within the realm of possibility that the dilemma of the C'aine Mutiny could face such an employee, and if through obedience to the surgeon he were to place the patient in jeopardy, the hospital, under the Bing doctrine, would be liable, provided, of course, that in following the order the employee remained within the course of his employment with the hospital.
The situation would, therefore, bring into play that part of the master-servant doctrine dealing with special employment, and the law seems well settled that in order for the general employee of one person to become the special employee of another, the former must surrender and the latter assume the power to command the employee as to the details as well as the ultimate result of his work. (Wawrzonek v. Central Hudson Gas & Elec. Corp., 276 N. Y. 412.) While the doctrine is clear, however, it establishes no more than a factual test (Stone v. Bigley Bros., 309 N. Y. 132), the proof of which must be sufficient to overcome a presumption of continuance of the general employment (Bartolomeo v. Bennett Contr. Co., 245 N. Y. 66) and which has been labeled quantatively in the Stone case (supra, p. 140) “ conclusive proof of surrender of control by the general employer ” (emphasis supplied). It has also been held that, although an employee in the general employment of one does work which primarily benefits a special employer but which is substantially though indirectly beneficial to the general employer, the factual inference may be drawn that he is acting within the scope of his general employment. (Delisa v. Arthur F. Schmidt, Inc., 285 N. Y. 314.)
Thus, it would appear that when an employee of a hospital assists an attending surgeon in an operation, a question of fact is presented as to whether the hospital has completely surrendered control with the result that the employee becomes the special employee of the surgeon and the hospital is relieved of liability for his acts. If such a question were resolved adversely to the hospital, notwithstanding the fact that the employee, in accordance with the policy of the hospital, followed the directions and commands of the surgeon, the hospital would, if such directions and commands were negligent, be cast in damages due to the primary fault of a surgeon for whose negligence they would not otherwise be responsible. That such a *895 determination could be made after trial, and cannot be made upon a motion directed to two unparticularized pleadings, can be seen from the painstaking factual analysis upon a complete record made by the Court of Appeals in Irwin v. Klein (271 N. Y. 477) in determining the question of special employment. We are, therefore, unable to hold as a matter of law that the mere obedience by a hospital employee to the negligent direction of an attending surgeon exonerates the hospital from the effect of the Bing doctrine.
What then of the ‘ ‘ factual disparity between the delinquency ’ ’ of the parties (McFall v. Compagnie Maritime Belge, 304 N. Y. 314, 330) as that test is used to determine whether one is actively negligent and the other passively negligent and thus fix the right of indemnity? Can it be said, again as a matter of law, that a hospital employee is guilty of active negligence in following the orders of the surgeon? We think not, particularly in view of the holding in Broderick v. Cauldwell-Wingate Co. (301 N. Y. 182, which resulted in a new trial 278 App. Div. 792) in which ease an affirmative act of contributory negligence was exonerated because done pursuant to direction of the defendant assuming control. An employee of a hospital assisting a surgeon is undoubtedly under a greater duty to follow orders than was the plaintiff in the Broderick case.
The rule giving rise to implied indemnity has been stated by Judge Edeb in his concurring opinion in Burke v. City of New York (2 N Y 2d 90, 95-96) as follows: “ ‘ Implied indemnity ’ is a doctrine ‘ based upon principles of equity ’ (Trustees of Geneva v. Brush Elec. Co., 50 Hun 581, 584) evolved by the courts to ameliorate in exceptional circumstances ‘ the rigor of the rule which forbids recourse between wrongdoers. ’ (Washington Gas Light Co. v. District of Columbia, 161 U. S. 316, 327.) It is applied only in situations where the relationship between joint tort-feasors to one another or to the event indicates such a difference in their respective delinquencies that one may be said to be actually or primarily, and the other only legally or secondarily, responsible for the happening of the consequent damages. The law will then imply an obligation on the part of the former to indemnify the latter. The doctrine is not necessarily limited to the traditional active-passive differentiation between joint tort-feasors. It mcludes also cases of neglect of a duty owing by both but which, as between the two, was to be performed by one of them. (See, for example, Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola, 134 N. Y. 461; Phoenix Bridge Co. v. Creem, 102 App. Div. 354, affd. 185 N. Y. 580; Tipaldi v. Riverside Memorial Chapel, 273 *896 App. Div. 414, affd. 298 N. Y. 686; Wischnie v. Dorsch, 296 N. Y. 257.) ” (Emphasis supplied.)
There is no doubt, of course, that if the surgeon gave an order which was negligently performed by the hospital employee, there could be no recovery over; although the hospital, in such a case, could claim over against its own employee for, as between those two, the hospital would be only passively negligent (Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola, 134 N. Y. 461; Opper v. Tripp Lake Estates, 274 App. Div. 422; Fedden v. Brooklyn Eastern Dist. Term., 204 App. Div. 741); nor is there any question that if concurring acts of negligence by each contributed to the accident, the third-party complaint would fall. The only thing held here is that facts could be offered and evidence adduced, fully consistent with the pleadings, which could result in a jury question as to whether the hospital employee was only passively negligent and the surgeon actively negligent. If through bills of particulars, examinations before trial and discovery it is developed that no such question exists, the third-party defendant has his remedy in the form of summary judgment. The motion is accordingly denied.